IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 4:13CR3121 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| JOSEPH J. BENZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

    The government has filed a motion in limine to preclude the defendant from offering at trial psychiatric and psychological testimony regarding defendant's mental state (filing 35). The motion will be granted.

    On March 10, 2014, the defendant filed a notice pursuant to Rule 12.2 of the Federal Rules of Criminal Procedure indicating his intention to offer evidence of a mental condition or defect bearing on the issue of defendant's guilt.[1] The notice states that the defendant was prescribed Pramipexole (brand name, Mirapex) for treatment of his Parkinson's disease, and that

> within a reasonable degree of psychological certainty, there are indications in the medical literature that Pramipexole has led to several

---

[1] Rule 12.2 provides in pertinent part:

(b) Notice of Expert Evidence of a Mental Condition. If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on either (1) the issue of guilt or (2) the issue of punishment in a capital case, the defendant must--within the time provided for filing a pretrial motion or at any later time the court sets--notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk. The court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders.

Fed. R. Crim. P. 12.2(b).

> adverse side effects, which have been shown to limit a person's ability to knowingly, willfully, and cognizantly engage in volitional behavior. Case reports and published research in scientific journals indicate that people taking Pramipexole as prescribed have experienced mania, obsessive-compulsive spectrum-behaviors, panic attacks, compulsive sexual behavior, hypersexual behaviors, compulsive gambling, compulsive shopping, compulsive eating, and the onset of a sexual paraphilia. (Tajima-Pozo, K., Bardudo, E., Aguilar-Shea, A. L., & Papanti, D. (2011). Paraphilia as adverse drug reaction to dopamine agonist (Pramipexole). *Acta Neuropsychiatrica*, 23(2), doi:10.1111/j.1601-5215.2011.00531.x).

(Filing 18.) The notice further states that "the Defendant's alleged criminal behavior in this case may be the result of an involuntary reaction or side effect of his use of Pramipexole which would negate an element of specific intent to commit the offense charged." (*Id.*)[2]

The offenses with which the defendant is charged, receipt and distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2), and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), do not require proof of specific intent. It is sufficient that the defendant acted "knowingly,"[3] which term "merely requires proof of knowledge of the facts that constitute the offense."

---

[2] Filed with the government's motion in limine is a report prepared by the defendant's expert, Kirk A. B. Newring, a clinical psychologist. Mr. Newring interviewed the defendant, reviewed his medical and pharmacy records, and researched the literature regarding the impact of Pramipexole on behavior. Mr. Newring opines that "[w]ithin a reasonable degree of psychological certainty, during the interval of January-May 2013 it is likely that [the defendant] met diagnostic criteria for ... Impulse Control Disorder As a Result of Pramipexole Consumption (prescription) ... [and] Medication-Induced Major Neurocognitive disorder." (Filing 37-1, at 7.) He concludes that the defendant "lacked the capacity to form the volitional intent to download child pornography due to his experience of an adverse reaction to prescription pramipexole." (*Id.*, at 19.)

[3] The first statute applies to "[a]ny person who ... knowingly receives or distributes ... any child pornography ... or ... any material that contains child pornography," 18 U.S.C. § 2252A(a)(2), while the second statute applies to "[a]ny person who ... knowingly possesses ... matter which contain any visual depiction ... [the production of which] involves the use of a minor engaging in sexually explicit conduct ... and ... such visual depiction is of such conduct," 18 U.S.C. § 2252(a)(4)(B).

*United States v. Voice*, 622 F.3d 870, 876 (8th Cir. 2010) (quoting *Bryan v. United States*, 524 U.S. 184, 193 (1998)). *See United States v. Ballieu*, 480 Fed.Appx. 494, 497, 2012 WL 1655703, *2 (10th Cir. 2012) (the "knowing" reception or distribution of child pornography in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(2)(A), is a crime of general intent, as to which diminished capacity is not a defense); *United States v. Walden*, 478 Fed.Appx. 571, 576 n. 2, 2012 WL 1537915, *4 (11th Cir. 2012) (conviction for knowingly receiving and possessing child pornography in violation of 18 U.S.C. § 2252A(a)(2), (a)(5)(B) required only the mens rea of general intent); *United States v. Larson*, 346 Fed.Appx. 166, 168, 2009 WL 2917778, *1 (9th Cir. 2009) (district court properly rejected diminished capacity defense because possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) is a crime requiring only general intent); *Simpson v. United States*, 2013 WL 1490462, *10 (E.D.Mo. 2013) (diminished capacity defense not available to defendant charged with receipt and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(2), (a)(5)(b), which are general intent crimes). "The defense of diminished capacity only can be used as a defense to a specific intent crime," *id.* (citing *United States v. White Calf*, 634 F.3d 453, 457 (8th Cir. 2011)),[4] and "[p]sychological evidence is relevant to mens rea only when the defendant is charged with a specific intent crime," *United States v. Cameron*, 907 F.2d 1051, 1063 n. 20 (11th Cir. 1990) (cited with approval in *United States v. Yockel*, 320 F.3d 818, 825 n. 4, 826 (8th Cir. 2003)).

In passing the Insanity Defense Reform Act of 1984 ("IDRA"), Pub.L. No. 98-473, Title II, § 402(a), 98 Stat. 2057, § 20, *recodified at* 18 U.S.C. § 17, Congress "eliminate[d] all forms of psychiatric defenses based upon lack of volitional control or an inability to reflect adequately before taking an action ...." *Cameron*, 907 F.2d at 1066, n. 29 (quoting *United States v. Pohlot*, 827 F.2d 889, 905-06 (3d Cir. 1987));

---

[4] For example, "[i]ntoxication is a defense to possessing stolen guns, a specific intent crime, but it is not a defense to unlawful possession of a firearm as a previously convicted felon, a general intent crime. *United States v. Archambeau*, 179 Fed. Appx. 403, 405, 2006 WL 1540908, *2 (8th Cir. 2006) (citations omitted).

*see also* United States v. Brown, 326 F.3d 1143, 1146 (10th Cir. 2003) ("IDRA bars the introduction of evidence of a defendant's mental disease or defect to demonstrate that he lacked substantial capacity to control his actions or reflect upon the consequences or nature of his actions."); United States v. Worrell, 313 F.3d 867, 872 (4th Cir. 2002) ("The language of the statute leaves no room for a defense that raises 'any form of legal excuse based upon one's lack of volitional control' including 'a diminished ability or failure to reflect adequately upon the consequences or nature of one's actions.'") (quoting *Cameron*, 907 F.2d at 1061). This is precisely the type of psychological evidence the defendant proposes to introduce in this case.

Accordingly,

IT IS ORDERED that the government's motion in limine (filing 35) is granted and the defendant is precluded from offering at trial psychiatric and psychological testimony regarding defendant's mental state.

DATED this 11th day of February, 2015.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge

---

* This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.