1           IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEBRASKA
2

3   UNITED STATES OF AMERICA,      ·      Docket No. 4:13CR3121
                                   ·
4           Plaintiff,             ·
                                   ·
5       vs.                        ·      Lincoln, Nebraska
                                   ·      January 6, 2016
6   JOSEPH J. BENZ,                ·      12:12 p.m.
                                   ·
7           Defendant.             ·
    . . . . . . . . . . . . . . . .

8

9

10

11              TRANSCRIPT OF STATUS CONFERENCE
          BEFORE THE HONORABLE RICHARD G. KOPF
12          SENIOR UNITED STATES DISTRICT JUDGE

13

14

15

16

17   APPEARANCES:

18   For the Plaintiff:          MR. STEVEN A. RUSSELL, ESQ.
                                 Assist. United States Attorney
19                               487 Federal Building
                                 100 Centennial Mall North
20                               Lincoln, NE  68508

21   For the Defendant:          MR. ROBERT B. CREAGER, ESQ.
                                 Anderson, Creager & Wittstruck
22                               1630 K Street
                                 Lincoln, NE  68508

23

24
     Proceedings recorded by electronic sound recording, transcript
25   produced by transcription via mechanical stenography.

1                          I N D E X

2                                    Direct  Cross  Redirect  Recross

3       WITNESSES FOR THE GOVERNMENT:

4          None

5       WITNESSES FOR THE DEFENSE:

6          None

7       EXHIBITS:                              Marked  Received

8          None

9

10                                                      PAGE

11      CERTIFICATE OF REPORTER.............................   37

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (At 12:12 p.m. on February 6, 2016, with counsel for the

2    plaintiff present and counsel for the defendant present, the

3    following proceedings were had:)

4        THE COURT:  Good afternoon.  We're on the record

5    now in U.S. against Joseph Benz.  Mr. Benz is -- Dr. Benz,

6    rather, is not here.  We're here to conduct a status

7    conference.

8        Would the lawyers enter their appearance?  First

9    for the government?

10        MR. RUSSELL:  Your Honor, please enter the

11    appearance of Steven Russell on behalf of the United States.

12        MR. CREAGER:  Judge, Bob Creager, 1630 K Street,

13    Lincoln, for Mr. Benz.

14        THE COURT:  Thank you.  Counsel, the first thing I

15    want to discuss with you -- well, let me back up.  If someone

16    reads this transcript, this is the -- a child pornography

17    case involving a psychologist, academic psychologist, who

18    suffers from MS and is taking a particular drug.  His expert

19    witness has said that he was, in the language of the statute,

20    unable to appreciate the nature and quality of the

21    wrongfulness of his acts.

22        I have therefore overruled the defendant's --

23    pardon me -- the government's motion in limine on the issue

24    of insanity.  I have granted the government's motion -- had

25    previously the government's motion in limine regarding a

```
1    diminished capacity defense because the relevant statute

2    requires knowledge rather than some specific intent.

3         So that's the context of our hearing today.  And I

4    want to make sure that we're all on the same page with regard

5    to some technical and procedural matters.  The first, occurs

6    to me, is the issue of when we should try this and how long

7    it will take.  Apparently -- well, I shouldn't say that.  Let

8    me hear from the government first.

9         MR. RUSSELL:  Well, Your Honor, prior to this

10   hearing Mr. Creager and I spoke over the phone regarding the

11   issue of trial.  Based on the declaration that was filed with

12   the court on the 23rd...

13        THE COURT:  That's the declaration of Dr. Benz in

14   which he acknowledges, among other things, that if he is

15   successful in his affirmative defense that there are,

16   nevertheless, severe consequences flowing from such a

17   decision by the jury, not the least of which is possible

18   incapacitation at the Bureau of Prisons and subsequent

19   supervision of him by the court and others.

20        Go ahead.

21        MR. RUSSELL:  Your Honor, the -- yes, that is the

22   declaration.  And as far as trial, the logistics of that, I

23   think both Mr. Creager and I are of an agreement that I think

24   that the real issue here, obviously, is the mental capacity

25   of the defendant and the testimony regarding that issue.
```

1          THE COURT:  Right.

2          MR. RUSSELL:  That in talking with Mr. Creager, I

3     think we have agreed that we can hopefully figure out a way

4     in which we can stipulate or settle on certain factual issues

5     that would then get the issue of the insanity defense and I

6     think Bob's legal issue regarding the diminished capacity

7     defense to the court, shorten the trial in that way...

8          THE COURT:  Let me just interject.  Bob -- when you

9     say Bob's diminished capacity, you mean he -- by trying it,

10    he will preserve that issue because I will have precluded him

11    from presenting a diminished capacity defense and that will,

12    if he's unsuccessful on the insanity defense, provide him,

13    among a litany of other complaints, reason to appeal?

14         MR. RUSSELL:  Yeah.  Yes.  I mean, the -- yeah.

15    The short is, we want to make sure that all of the

16    defendant's legal issues are preserved, at the same time

17    having the matter set for trial.

18         THE COURT:  Right.

19         MR. RUSSELL:  So what Mr. Creager and I have talked

20    about is, you know, as we've done in this case so far, we've

21    been kind of taking this one step at a time.  Now what we'd

22    like to do, with the court's permission, is to fashion a way

23    that we can get to the meat of the issue with very little

24    testimony on the main issues or on the -- I guess the

25    criminal context, more evidence on the defense and the

1  rebuttal to the defense.

2           THE COURT:  Sure.

3           MR. RUSSELL:  What we would like to do is to set

4  an -- I don't want to mean -- I hate to say a -- use a status

5  conference, but that's really probably what it will boil down

6  to is set a status conference in 30 days so that we can

7  indicate to the court where we can get these issues

8  stipulated to and where we can get testimony on the other

9  issue with -- related to the mental capacity and...

10          THE COURT:  So you'd want to have -- I mean,

11 essentially what you'd want to do is have the government

12 think through what its order of proof is and then for each

13 item on that order of proof see if you and Mr. Creager can

14 agree on that --

15          MR. RUSSELL:  Right.

16          THE COURT:  -- or can't, and then present that to

17 me and see if we can't work that out.

18          MR. RUSSELL:  And the other thing I -- more -- more

19 basic is, I think both Mr. Creager and I have to go back to

20 our respective clients and/or supervisors just to make sure

21 that they would be willing to agree to a bench trial rather

22 than a trial to the jury, because that would be the way that

23 we think that it would -- again, make sure that the legal

24 issues are presented and yet get the matter resolved to the

25 court as to have either a ben- -- you know...

 1          THE COURT:  Whoa, whoa, whoa.  Wait just a minute.

 2   Let's talk about a bench conference.  I...

 3          MR. RUSSELL:  No.  No.  Not a bench con- -- a bench

 4   trial.  A trial to the court rather than a trial to a jury.

 5          THE COURT:  I hadn't given that any thought at all.

 6          MR. CREAGER:  Judge, if I could weigh in, for what

 7   it's worth?

 8          THE COURT:  Go ahead.

 9          MR. CREAGER:  There are, and even by -- with

10   reference to the materials you've provided to counsel this

11   morning and which you noted in this Blumberg decision, you're

12   likely to follow the language of that case, what I think my

13   objective is is to simply provide my client with the best

14   defense I can provide, understand the limitations of the

15   court's rulings on these evidential matters, and find a way

16   to not inadvertently waive or give up defenses.

17          Now, we talked at -- earlier at some status

18   conference, I am quite sure, whether it was on the record or

19   not I don't know, that let's say hypothetically you had

20   precluded the insanity defense as well.  Well, then I know as

21   a seasoned trial lawyer I have no defense and going through a

22   jury trial would have been a meaningless waste of time.

23          And I think at that point in time when you ruled on

24   the state's motion -- government's motion regarding the

25   diminished capacity I said, well, jeesh, Judge, maybe what we

1    ought to do is just tee up a bench trial or a stipulated

2    trial and your ruling on that would just be preserved for

3    appeal.  We -- I know we talked about that.

4              THE COURT:  Sure.  And I recall that as well.

5              MR. CREAGER:  Yeah.  And then when Dr. Newring, in

6    response to your order, opined on the broader subject of

7    sanity or we briefed that and the court, then understanding

8    the clear differences between the diminished capacity, the

9    burden of proof, the consequences, has now allowed

10   consideration of that defense, and for me the question

11   logically is you also have other legal issues underneath the

12   surface of what that means for Dr. Newring to testify, what

13   he's going to be able to testify to, and the whole issue

14   resurrects itself again by the court's reference to Blumberg,

15   in which to put it differently, your order -- your big print

16   in your order giveth, but the small print taketh away in the

17   sense that actually figuring out what the jury is going to be

18   able to consider becomes a complicated question.  Right?

19             So my thinking in response to that was, look, these

20   are legal questions.  The court's aware that there is a

21   difference of opinion to a matter of degree between the

22   state's expert and Dr. Newring, the defense expert.  That is

23   not lost on any of us that there is a --

24             THE COURT:  Sure.

25             MR. CREAGER:  -- there is clearly a foundation for

1   this defense.  Whether it tips in favor of the defendant or

2   in favor of the prosecution is the ultimate question.  I am

3   not -- I -- my client generally does not have any objection

4   to that ultimate question being decided by the court using

5   the appropriate legal standards you define.  In other words,

6   I may still object to how you handle the insanity question,

7   right?  So even though you say...

8       THE COURT:  And you may -- I assume you'd also want

9   to put questions to, well, would he be able to formulate and

10   would he understand the wrongfulness of his conduct.

11       MR. CREAGER:  And all of that, if it's in front of

12   a jury, would have to be either done by offer of proof or a

13   complicated series of questions off the record.  And we're

14   all smart enough to understand that jury's get confused by

15   all of that, but it -- essentially we don't have any problems

16   living, if you will, or dying by the court's ruling on the

17   merits of the defense, but we just want to make sure that the

18   court's view of what that defense is or what its limitations

19   may be under the rules is also preserved for an appeal.

20       So my thought was simply Mr. Benz would seriously

21   consider essentially stipulating to the essential elements of

22   the government's case.  So we don't -- you know, child

23   pornography cases and FTK reports and we don't need to go

24   through all of that and identify the images that meet the

25   definition.  And we have the possession and the receipt, so

1   somebody would offer that there was a file-sharing program

2   and probably just offer the affidavit for search warrant, you

3   know, to establish what the government thinks it needs to

4   establish that he possessed it knowingly and he was engaged

5   in distribution through the file-sharing network.

6        We would have essentially no actual defense to the

7   possession charge because he has freely admitted both in his

8   interviews and in his psychiatric or psychological

9   evaluations that he was searching for the images of himself

10  and he accumulated this database.  So that part is really not

11  disputed.

12       There would be the normal dispute about whether

13  simply employing the file-sharing devices was intended to be

14  a distribution, and that might exist with or without an

15  insanity defense, but you're familiar with that argument,

16  too.  It's fairly common.  You know, were the files selected

17  to share or did you set it up in a way that indicated you had

18  an intent to distribute, were people sharing from -- all that

19  stuff.

20       And we could hopefully find a way that either if

21  that's true, stipulate to it, or maybe have one witness come

22  in and offer some testimony for the record.  But we want to

23  get to the question of the psychiatric-based defenses.  I

24  know when we discussed it last time, before we discussed the

25  insanity component, I said something to the effect, well, I

1   am not going to waive jury if after I offer all of the

2   evidence then you're going to rule he lacked a diminished

3   capacity.  I want to preserve that issue for the jury --

4           THE COURT:  Sure.

5           MR. CREAGER:  -- as a factual matter.  And

6   everybody know, I am -- Mr. Creager, I am not going to change

7   my mind in the middle of the trial after you waive jury and

8   rule on the merits of your defense.  And I think that would

9   still hold.

10          So really the question becomes from the defense

11  perspective, what is the advantage or disadvantage of having

12  this now more technical question about what Dr. Newring can

13  testify to or not testify to, in which we're probably

14  operating under offers of proof and you're going to make some

15  ruling based upon the procedure as you see it, I fail at that

16  point to see the advantage of having a jury figure that out

17  as opposed to the court figuring it out on its merits.

18          THE COURT:  And I am entirely agnostic about that.

19  I just -- just listening to you, it -- if both of you -- I

20  mean, you guys are among the, in my opinion, top ten criminal

21  lawyers around.  If you guys say you want to try it to the

22  court because of those reasons, I -- I'll -- I would probably

23  agree to that, I mean, understanding that I've seen a lot of

24  things that a finder of fact would not have seen and -- but

25  if the government's willing to waive a jury and your client

1    would execute a written waiver -- I have Mr. Eske on the line

2    with me, my -- one of my career law clerks.

3            Jim, can you see any reason why I shouldn't try

4    this to the bench, other than it would make work for you?

5    Jim?

6            THE CLERK:  He's just listening through the audio.

7            THE COURT:  Send me an e-mail, Jim.

8            While we're awaiting that, let's assume he advises

9    me that he doesn't see a problem that I haven't thought of,

10   okay.  So 30 days from now you come in.  You've got a

11   stipulation of facts about essentially what happened and

12   what's undisputed.

13           There may be some -- I -- may be some unresolved

14   issues you'd ask me to deal with and we got through that.

15   Then we'd set the matter -- assuming that there was a jury

16   trial waiver from both sides, then we would set it for trial

17   and we'd go ahead and try it.

18           MR. RUSSELL:  Right.  Yeah.  I mean, I guess the

19   way that Mr. Creager and I were envisioning it, essentially,

20   obviously, with the -- with the jury waivers we'll have

21   enough information hopefully in those -- in the stipulation

22   that the prosecution's case would for most intents and

23   purposes be proven.

24           We would then go forward with the defense.  And

25   then it would just be Mr. Newring being called and then the

 1    BOP doctor being called and any other rebuttal that we might

 2    have in relation to that, as Bob said, psychiatric defense.

 3    Because I -- yeah, that's the way I would envision it.

 4              MR. CREAGER:  Without -- we could stipulate to the

 5    evidence, if you will.  Without stipulating to the

 6    conclusion, you know, that he -- that he's guilty of it, I'd

 7    stipulate essentially to the prima facie case that --

 8              MR. RUSSELL:  Right.

 9              MR. CREAGER:  -- would meet the definition of

10    possession and make a prima facie case that he possessed it

11    in such a fashion that he could distribute it.

12              MR. RUSSELL:  Right.  I am...

13              MR. CREAGER:  That would be the government asking

14    me to stipulate to whatever the underlying facts are, not

15    that...

16              THE COURT:  No.  No.  I understand.

17              MR. CREAGER:  Right.  And then the -- then they'd

18    look at me and they'd rest and I'd say, okay, I call my first

19    witness at now what -- maybe Mr. Benz has to testify to some

20    foundational facts, but it would essentially be Dr. Newring

21    expounding on his report, testifying on cross-examination,

22    and then the government offering rebuttal, because it is my

23    burden of proof, and it doesn't arise until I raise it;

24    correct?  I mean, the government doesn't have to anticipate

25    it, doesn't have to...

1          THE COURT:  No.  That's one of the things I raised
2     in the memorandum, whether we tried it to a jury, whether --
3     how we ought to proceed, whether the government would want to
4     anticipate it, whether you'd agree that they could anticipate
5     it, that sort of thing.
6          But if we're going to try it to the court, the best
7     way to do it I would think would be that the government's
8     stipulation would come in and maybe a witness to put it in,
9     and then you'd go forward and you'd have your testimony from
10    Benz and whomever, and the expert, and then the government in
11    rebuttal would call their psychology expert.  And then the
12    matter would be submitted, and we'd go from there.
13         MR. CREAGER:  Right.  And I -- there is something,
14    given the complexities at all levels of this case, that seems
15    fair and reasonable because most of it is a legal question in
16    any event, and I know that question of the burden of proof is
17    always on the fact finder, but we're sub-...
18         THE COURT:  Well, let -- let's be clear.  And I
19    don't want to in any way get into plea bargaining of any
20    kind, but if it were handled in this way, there is an
21    argument that -- I haven't thought this through, but there's
22    an argument about acceptance of responsibility.  I'll just
23    leave it at that.  I haven't thought through it.  I have only
24    allowed acceptance -- in fact, I think maybe you tried it.
25         MR. CREAGER:  Yeah.

1          THE COURT:  It -- with a lawyer.  The case I

2     remember was a case with a lawyer who -- whose defense was,

3     yeah, I used a boatload of crack cocaine or --

4          MR. CREAGER:  Yeah.

5          THE COURT:  -- powder cocaine.

6          Bob, who was that guy?

7          And I freely admit it, and, yeah, a lot of people

8     came over to my house.  And God knows a lot of cocaine was

9     put up various noses, but I didn't give it to anybody and,

10    therefore, I am not guilty of a felony.  I am guilty of a

11    misdemeanor.

12         And I think I -- I sub- -- I am not even sure

13    whether I gave the jury a lesser included, but I...

14         MR. CREAGER:  I have given some thought to that

15    and...

16         THE COURT:  I don't remember, but I think I gave

17    that lawyer acceptance of responsibility or at least two

18    points of...

19         MR. CREAGER:  Well, yeah.  If, Judge, this were

20    about offense levels and variances and all of the other

21    things that are normally factored into a client's decision to

22    accept plea bargains or to negotiate dispositions, I would

23    worry about that.  I am just telling you that for what it's

24    worth, Mr. Benz's position is fairly clear that the

25    consequence of being a convicted felon, registered sex

1    offender, at his age and given his health, is -- the

2    difference between the two points and the three points at

3    some point becomes totally irrelevant to the discussion.

4         And I would point out if this kind of comes up,

5    Dr. Benz didn't create this issue.  It's not a matter of him

6    accepting or not accepting responsibility.  He's clearly

7    admitted he engaged in the conduct.  What he complains about

8    is whether the medication, you know, offers some sort of

9    either mitigation or defense.

10        And that's being proffered by experts.  So I --

11   we'll leave for another day where you can reasonably rely on

12   your expert to say you have a defense and preserve your right

13   to accept responsibility for your conduct.

14        THE COURT:  Well...

15        MR. CREAGER:  I can't win or lose the argument with

16   you right now.  I just say I don't know the answer any more

17   than you do, but...

18        THE COURT:  No, I am only offering it as a thought,

19   okay.  So...

20        MR. CREAGER:  Here's what I -- I would like to take

21   the opportunity, while we're just talking about the issues in

22   the case.  See, here's what I don't understand.  And

23   Mr. Eske -- and he's listening, and you've provided Blumberg.

24   I keep referring to the language that's in the Eighth Circuit

25   pattern and jury instruction on this issue, and they

1    recognize Blumberg and the rule, but they cite to their own

2    case in Bartlett, the 856 F.2d 1071 case in 1988, and still

3    refer to it in the current iteration of the insanity,

4    diminished capacity instruction, and do not seem persuaded,

5    at least in the comments, that Blumberg is correct, that

6    if -- and I'll just quote for it, Insanity Defense Reform

7    Act, which is what we're talking about, allows defense to

8    present expert evidence that a mental disease or defect,

9    including diminished responsibility at the time of the

10   alleged crime, rendered the defendant incapable of forming

11   the requisite intent.

12          The case suggests that the instructions

13   specifically or as a whole should permit the defendant to

14   argue this as his theory of the defense.  In other words, the

15   Eighth Circuit has recognized the rule and the reform act,

16   but has differed in the comments.  And I am not aware of any

17   case that has overruled the comment.

18          THE COURT:  Well, the -- just the issue...

19          MR. CREAGER:  So...

20          THE COURT:  Just so you -- this is sort of an

21   aside, but the model Eighth Circuit instructions are not the

22   opinion of the Court of Appeals.  They're a separate

23   committee.  If you read the introduction, it is clear that

24   the Court of Appeals has not given its -- now, I think what

25   is being said is this, in order -- and we're talking now

1     about Instruction 903.

2             A defendant is insane if at the time of the alleged

3     criminal conduct, as a result of a severe mental disease or

4     defect, he or she was unable to appreciate the nature and

5     quality or the wrongfulness of his or her acts.  Now...

6             MR. CREAGER:  And I don't mean to interrupt, but my

7     problem is -- and maybe it's all mine -- that I can't read

8     Blumberg and the line that says, The district court did not

9     allow the expert witness to state whether Blumberg was able

10    to appreciate the nature and quality or wrongfulness of his

11    actions in Blumberg, which is totally linguistically

12    contradicted by the rule itself.

13            THE COURT:  No.

14            MR. CREAGER:  So I don't -- I am...

15            THE COURT:  No.  I think it's -- all it's saying is

16    that that is an ultimate legal issue for the jury.  The

17    expert can testify about the delirium and the facts of the

18    delirium.  The -- here we're talking about medically induced

19    delirium.  And I think the expert could probably testify what

20    does medically induced delirium look like, what is a --

21    what's going through a person's mind.

22            But whether this defendant was unable to appreciate

23    the nature and quality or the wrongfulness of his or her acts

24    must be decided on the facts, not the conclusion of the

25    expert that those facts lead him or her to conclude,

1   something affirmative about the inability to appreciate the

2   nature and quality or the wrongfulness of the act.

3        MR. CREAGER:  If you...

4        THE COURT:  Slicing it thinly...

5        MR. CREAGER:  Very thinly because I don't --

6   because how does -- and this is why the bench trial probably

7   makes more sense, the more I talk about it.  The question of

8   whether or not an expert must connect the dots between the

9   general proposition that a chemically induced delirium would

10   affect the ability to appreciate -- I mean, you can't -- in

11   my judgment you can't ignore the fact that the testimony must

12   connect the theory to the individual defendant.

13        Whether the individual defendant actually suffered,

14   that is the ultimate conclusion, but I don't see how you can

15   argue that the expert cannot say that persons who suffer this

16   chemically induced delirium cannot appreciate the nature or

17   the wrongfulness of their conduct.

18        And maybe I am the one reading this wrong.  I don't

19   think an expert just testifying that this person had a DSM

20   whatever chemically induced delirium gets the defendant

21   across the preponderance of the evidence finish line.

22        THE COURT:  Clear...

23        MR. CREAGER:  I think...

24        THE COURT:  Actually, clear and convincing.

25        MR. CREAGER:  All right.  Well, not for the pre- --

1    not for present -- presenting the defense.  Isn't it a

2    preponderance of the evidence?

3            THE COURT:  No.  It's clear and convincing.

4            MR. CREAGER:  Okay.  Well, whatever the threshold

5    is, all right, that it's whatever burden I may have, the

6    expert, it seems to me, must get me across that line.  And

7    for the government -- let's say you say the expert cannot

8    testify.  And maybe I am talking myself into the answer the

9    more I think about it.

10           There may be a difference between Dr. Newring

11   saying, I studied this, I looked at this, I did the

12   literature search, I checked the drugs, and in my opinion he

13   was insane.  I believe that is prohibited by the rule, just

14   the naked ultimate conclusion like an expert testifying

15   essentially that he's not guilty.

16           THE COURT:  Uh-huh.  Uh-huh.

17           MR. CREAGER:  But I think Dr. Newring would have to

18   testify that the medically induced delirium, psychosis,

19   whatever, affects the ability of that person to appreciate

20   the nature and quality of the conduct and the wrongfulness of

21   that conduct to get me to the point where I can assert the

22   defense, because the government will stand up and say, well,

23   nobody has said that he doesn't understand -- you know what I

24   mean?

25           I -- it's a -- it's a -- it's a threshold question.

1    Now, he may not be able to say specifically that Mr. Benz,

2    when he did this, was acting in response to it, but it sure

3    is consistent with it.

4            THE COURT:  Well, here --

5            MR. CREAGER:  And if this...

6            THE COURT:  -- let me give you an example.  I

7    think, because I have given this a little bit of thought --

8    and I don't know whether this is -- this is just me thinking

9    out loud.  If I am a Ph.D. in psychology and I say this

10   person suffers from medically induced delirium and you say,

11   well, okay, but he said he's received these images and the

12   judge won't let me say that -- that -- won't let you say

13   appreciate the nature and quality, it seems to me that the

14   answer to that might be that it's like looking at a book of

15   photographs, thumbing through these books without looking for

16   one photograph.

17           I am not paying attention to any of this.  I am not

18   consciously knowingly -- these images have no impact on me.

19   It -- it's like a huge book of photographs, and I am looking

20   for one tiny needle in a haystack.  And that's what I mean,

21   says the expert, when I say the delirium.

22           I -- you know, I don't know whether your expert --

23   but at least in terms of my thinking -- and, frankly, why I

24   denied the government's motion is I can conceive of a

25   circumstance where an expert would say something like that.

1   And I think that fits, even though Brother Russell need only

2   prove knowledge.  How does he prove know- -- I mean, if

3   you've got an affirmative defense, says, oh, yeah, I made

4   a -- he admits having all of these, but if it's -- if it's

5   like a -- if it's like a moving picture is comprised of

6   various images throughout the moving picture and, yeah, I

7   watch the moving picture, but the only thing I was -- I was

8   focused on was one-tenth of a second of that, do I have

9   knowledge of the other facts?

10          I mean, that's how -- that's why I think that you

11   can present this, that -- that sort of -- that's why I think

12   I am legally bound to allow you to try this.  Whether that's

13   persuasive or not, of course, is an entirely different

14   question, but I think what the circuit is saying -- and to a

15   jury it -- the judge in the -- in the Blumberg case was

16   worried that Federal Rule of Evidence 704(b), you know, if

17   you read that --

18          MR. CREAGER:  Yes.

19          THE COURT:  -- it says exactly what the circuit

20   said, and the circuit said it's constitutional.  So I think

21   you can do it.  I mean, I think it's theoretically possible

22   to do, whether your guy under oath with his academic -- or,

23   his licensure -- I don't mean this in a threatening way, but

24   with his professional qualifications at issue can say the

25   things necessary to convince a finder of fact that the facts

1   are such that this guy really didn't appreciate the

2   wrongfulness or nature of the quality of his acts, I don't

3   know.

4          But I can -- as I have previously indicated, I can

5   conceive of one or more circumstances where that's possible.

6   I began -- and I -- and I'll tell you how I tripped over

7   this.  He used the word "delirium."  And I got to be -- got

8   to -- a long time ago I used to represent a bunch of

9   psychologists.  Anyway, I got to be thinking about what

10   delirium really means, and it occurred to me what I've just

11   told you.

12          So I -- it -- I don't think you're going to

13   convince me to allow this guy to get up and say or -- or

14   Steve's guy to get up and say, oh, yeah, he was able to

15   appreciate the nature and quality and the wrongfulness of his

16   acts.

17          MR. CREAGER:  Or is the converse true, that their

18   expert wouldn't be able to say, I don't -- I think he was

19   able to -- see, as long as it's...

20          THE COURT:  No.

21          MR. CREAGER:  As long as nobody gets to weigh in on

22   this particular defendant whether he did or...

23          THE COURT:  No.  His expert can't say it and nor

24   can yours.

25          MR. CREAGER:  And I think -- I think -- I don't

1    fundamentally disagree with that.  I think I -- I think I

2    said just instinctively there's a difference between the

3    expert just opining on the ultimate conclusion, whatever the

4    case may be, and that would be prohibited by the rule --

5          And I think it's kind of a dumb rule, in my

6    opinion, but I get the rule.

7          -- and then being -- or, being accused that my

8    expert did not get me to the level for even consideration of

9    the defense unless he can establish that there was some

10   evidence to support that he at least could be.

11         THE COURT:  Right.

12         MR. CREAGER:  Right?  I mean, it's the difference

13   between saying he can't -- he can't say that, you know, this

14   guy -- I may have taken the medication, but, for example,

15   there's a lot of people that don't go download child porn,

16   and so, therefore, there really is no actual connection

17   between the two.  There may be some scientific basis to

18   explain it, but the ultimate fact finder must conclude that

19   the conduct was caused by this delirium.

20         THE COURT:  And to be ultimately candid with you,

21   that question whether I would submit that issue to the jury,

22   given your burden of proof, whatever it is, but I do think

23   it's clear and convincing, but we'd nail that down, whether I

24   would -- if you try it to the court, that's less of a

25   concern, obviously, than whether I allow that to -- the --

1   that defense to go to the jury.  So...

2           MR. CREAGER:  And inartfully as I may have stated

3   it, what I was trying to say is that there are still

4   significant issues about how to apply the defense, whether

5   the case is tried to the judge or the jury --

6           THE COURT:  Oh, yeah.

7           MR. CREAGER:  -- and the instruct- -- and in my

8   opinion the error, if any, would manifest itself either in

9   the instructions or in the court's willingness to give the

10  instructions to the jury.

11          In other words, those rulings would manifest

12  themselves in, Mr. Creager, I am not going to give you your

13  insanity instruction because you didn't get there or, B, I am

14  not going to let your expert testify to what you think he's

15  going to testify to and so, therefore, the jury verdict will

16  be based upon something less than I had proffered.

17          All of that becomes as -- so long as the court just

18  simply rules in its own way on those issues...

19          THE COURT:  Well, that -- that's an interesting

20  question, because if you look at Rule -- Rule 23(c), you're

21  going to need to request that I make specific findings.  If

22  you don't, theoretically, I could just say guilty, so -- I

23  mean, I wouldn't do that.  I mean, I'd try not to do that to

24  you.  I wouldn't.  But I think that's something...

25          MR. CREAGER:  And this would all be part -- maybe

1   the status conference doesn't need to take a month maybe, but

2   my sense is I intended to ask for that.  And the -- if we all

3   understand that the objective simply here is to give Mr. Benz

4   a fair shot to assert his defense and that legal rulings

5   affecting the merits of that defense can be preserved for

6   appeal, the significant ones, the ultimate whether you

7   believe this witness or that belief as the fact finder, all

8   of that is fully understood by everybody, that that's what

9   fact finders do.

10         But if you were to rule, for example, that I --

11   under offer of proof I ask him to formulate the opinion, you

12   sustain the objection and he doesn't get to testify, you

13   reject the defense and I want to appeal, the failure to

14   consider the opinion, that would be there, right, you

15   would -- you would have said --

16         THE COURT:  Right.

17         MR. CREAGER:  -- or you would have ruled on that.

18   Likewise, if you say -- if I think the burden of proof is

19   preponderance of the evidence and you say it's clear and

20   convincing evidence.  As long as the fundamental rulings

21   about how the defense is considered by the court are there

22   for us to look at and decide whether there's error in that

23   process and preserve that for appeal, I -- that's all I am

24   trying to do.  I don't want a jury trial that we don't need

25   to have to preserve an issue on whether I am right or wrong

1    about the diminished capacity defense.

2            THE COURT:  Sure.

3            MR. CREAGER:  You know, the rest of these things

4    we're all smart enough to figure out, you know, what the law

5    is.  And I -- my view on the jury instruction is I agree with

6    you a hundred percent.  I don't think the circuit has

7    answered the question directly.  But from a defense

8    perspective, looking at that comment, it may be the

9    committee's view of that, that that's where the circuit might

10   be in light of that case, and the court hasn't specifically

11   said otherwise, I have to -- I have to -- until told

12   otherwise, you know, explore that option.  And I think the

13   court would think less of me if I didn't.

14            I mean, I -- that's kind of what I have to do.  I

15   have to find those little spots where there is some

16   uncertainty and exploit them if it's in my client's interest

17   to do that.  I do think, rightly or wrongly, that this whole

18   debate about whether this is a general intent knowledge crime

19   or a specific intent crime, it will give you a headache.  And

20   our Supreme Court recently went through that in a -- in a

21   decision which actually cites our case in its opinion.

22            THE COURT:  Oh, really?

23            MR. CREAGER:  Yeah, on whether it's a specific

24   intent or a general intent crime, and it produced a

25   concurring opinion.  Our Supreme Court citing the precedent

1    of the Benz order concluded that it is a specific intent

2    crime, not a general intent crime.

3            THE COURT:  Oh, so they said I was wrong?

4            MR. CREAGER:  Yeah.

5            THE COURT:  Oh, really?

6            MR. RUSSELL:  They said the federal government has

7    a different position than they have.

8            MR. CREAGER:  Yeah, which is fine, but...

9            MR. RUSSELL:  They -- yeah.

10           MR. CREAGER:  Yeah.

11           MR. RUSSELL:  They said the government's

12   position -- or, the federal government's position on intent

13   is different than their determination of specific intent for

14   a receipt charge.

15           MR. CREAGER:  Yeah.  And they also noted that they

16   could find no...

17           THE COURT:  Were they -- were they looking at a

18   federal statute?

19           MR. RUSSELL:  No.

20           MR. CREAGER:  It's the same -- it's the same --

21           MR. RUSSELL:  It's the state's.

22           MR. CREAGER:  -- language.  It just -- it just...

23           THE COURT:  Who wrote it?

24           MR. CREAGER:  I don't remember, but...

25           MR. RUSSELL:  I don't remember.

 1          THE COURT:  I want to send a nastygram.

 2          MR. CREAGER:  I did -- I sent it to you already, I

 3   think, but I'll send it to you again.  But what was

 4   interesting is they said they -- we can find no reported

 5   decisions other than, you know, this is matriculating up

 6   through the system because it's only the district courts that

 7   have been ruling on it because it appears that the issue is

 8   that all of the discussion about general intent versus

 9   specific intent crimes in this arena are not what the actual

10   issue was at the time of trial.  It's -- it's --

11          THE COURT:  Uh-huh.

12          MR. CREAGER:  -- the intoxication defense.  It's

13   the voluntary ingestions of drugs.  I -- and everybody is --

14   and they're on -- usually on maybe -- or post-conviction or

15   habeas corpus or collateral attack, you know, where --

16   ineffective assistance of counsel because my lawyer didn't

17   raise this defense.

18          And they said, well, you can't raise that defense,

19   it's a -- so I think Benz would be the first-generation

20   trial-based issue of whether diminished capacity would be

21   applicable to a -- what you call a general intent to possess

22   knowledge or general knowledge or a specific intent to

23   possess.

24          And that -- that's the part that gives me a

25   headache.  I just bring that up for discussion, but I -- I'll

1   send you a copy of the opinion.  It came down about, I don't

2   know, six months ago or...

3            THE COURT:  Well, good.  Yeah.  Send me -- how dare

4   they.

5            MR. CREAGER:  But it really was simple.  It was

6   really the -- the question that the court posed was, okay,

7   Creager, some friend of yours sends you an e-mail with an

8   attached picture of child pornography on it.

9            THE COURT:  Yeah.

10            MR. CREAGER:  And you didn't ask for it and you

11   didn't get it.  And you open it up and you click on it, and

12   there on your screen is this picture that meets the

13   definition of child pornography.  And you stare at it you and

14   you go, that's not good, and you close it and you delete it.

15            THE COURT:  Right.

16            MR. CREAGER:  Did you possess it?

17            THE COURT:  Uh-huh.

18            MR. CREAGER:  Okay?  And they said no.  They

19   said...

20            THE COURT:  Well, and the circuit courts, our

21   cir- -- the -- I think it's the DC circuit yesterday said

22   that if that -- similar thing.  It -- just because it resides

23   in the cached memory for a short period of time, you -- it

24   can't be knowing possession.

25            MR. CREAGER:  But if it's a general intent

1    possession, you do, that is, you -- I -- but this is the

2    language, the language is --

3              THE COURT:  No, because it -- be- -- no, because

4    it's the act of clicking on it.  You would have to prove that

5    at the time you clicked on it to open it, it's -- if you

6    inadvertently -- if you advertently open a book of

7    Oglethorpe's photography and he took a picture, an explicit

8    picture of a little child that would technically fit the

9    definition, but you just opened it up, you'd have to prove at

10   the time of opening it up -- if that was the only

11   pornographic image, you'd have to prove at the time you

12   opened the book, the government would have to prove that you

13   knew -- you, the defendant, knew that by opening that book

14   you would view Oglethorpe's photograph.

15             And that's where I think the confu- -- the

16   confusion in the technology occurs, but that's not what we

17   have here.

18             MR. CREAGER:  It -- but it's the question of

19   whether you knowingly possess the Oglethorpe book that had

20   contained within it the image of child pornog- -- that's a --

21   that would be a general intent crime.

22             THE COURT:  Yeah.

23             MR. CREAGER:  I generally in- -- I intend to

24   possess the book, the book with the child pornography in it.

25   I am guilty of possession.  The Supreme Court's view on this

1    is worth listening to.  Their view is that the general intent

2    to possess the item that controls the child pornography is

3    not the intent.  You have to specifically know.  And that's

4    where the language of general intent versus specific intent

5    becomes mind numbing.  You have to know...

6           THE COURT:  You have to know that the item is what

7    it pur- -- what the government purports it to be.

8           MR. CREAGER:  So if the e-mail -- if the e-mail

9    before the one that sent me the e-mail that says, you know,

10   Jim, send me that picture of the 14-year-old you were talking

11   about, and it comes and I open it --

12          THE COURT:  You're guilty.

13          MR. CREAGER:  -- I am guilty of possession even if

14   I said, well, I didn't know, maybe he was sending me an

15   e-mail -- you know, you can argue around the edges, but that

16   is a specific knowledge that that image contained a sexually

17   explicit photograph of, you know, whatever, whatever,

18   whatever.

19          And the reason that case of the Supreme Court was

20   of interest to me is it cites my Schuller -- the case I had,

21   Schuller, which is the discussion of what is a digital image

22   and how do you possess it if you've never really exercised

23   control over it, but they found it in a thumbnail in an

24   operating system saved by some computer thing that you had no

25   control over, and when they got there you had nothing on your

1    computer, no images of child pornography, but they found in

2    a -- in a forensic analysis that there was a thumbnail way

3    down in the -- in someplace that you could never see it or

4    never find it, and which was -- that was that case.

5              And they said that, well, it's evidence that it

6    must have been somewhere else at the time before it was

7    deleted, so it's circumstantial, sufficient circumstantial

8    evidence that the user possessed it at some point in time.

9              And the next case then took it a step further.  And

10   I don't know the name of it, but it said Schuller is one way

11   to possess it, but we need to answer the question of whether

12   it's a general intent crime or a specific intent crime.  Now,

13   it wasn't raised in the context of a diminished capacity

14   defense.

15             THE COURT:  Uh-huh.

16             MR. CREAGER:  But it was raised in the context of a

17   person saying, I didn't know it was there.

18             THE COURT:  Well, the problem that you described is

19   inherent in the difference between general intent and

20   specific intent crimes because --

21             MR. CREAGER:  The language...

22             THE COURT:  -- what you described can happen with

23   drugs.

24             MR. CREAGER:  That's right.  And it's always been

25   my theory that it's a defense to say, I thought it was

1  oregano, even though it turned out to be marijuana, that you

2  had to specifically know what the substance was, the nature

3  and quality of it, not that it was a controlled substance,

4  but you have to know that what you're possessing is a

5  controlled substance or is marijuana or whatever the case may

6  be.

7           THE COURT:  I think that's right.

8           MR. CREAGER:  Yeah, and...

9           THE COURT:  I think you have -- but you don't have

10  to prove it's the drug the government claims it to be.  You

11  only have to prove that it's a controlled substance.

12           MR. CREAGER:  Right.  Right.

13           THE COURT:  That you knew that it was illicit.  You

14  don't have to prove that you knew it was meth.

15           Okay.  When do you want to do this?

16           MR. RUSSELL:  Um...

17           MR. CREAGER:  I think -- well...

18           MR. RUSSELL:  I would ask for 30 days.  I know

19  Mr. Creager is in trial next week, and I think there's other

20  things going on.

21           MR. CREAGER:  Yeah, maybe that makes sense.

22           THE COURT:  Well, Mr. Creager, quit trying so many

23  cases.

24           MR. CREAGER:  My wife would agree with you.

25           THE COURT:  You just create too much trouble.

```
 1   When -- let's look here.  Wow...

 2              THE CLERK:  A lot of trials in Omaha.

 3              THE COURT:  What's today?  The 6th?

 4              THE CLERK:  Yes.  The...

 5              THE COURT:  What about Tuesday, February 9th at

 6   noon?  And I can move it if that doesn't work for you.

 7              MR. CREAGER:  Well, so far -- well, the Elder case

 8   I got fired on, so that's not mine.  I have a trial in Custer

 9   County and one in Douglas County, so that's not a good day.

10              THE COURT:  Okay.

11              MR. CREAGER:  Haven't figured out that one either.

12              THE COURT:  Trials in Custer County are fun.

13              MR. CREAGER:  And then I notice, is -- is State --

14   is U.S. vs. Rindone your case or is that Judge Gerrard's

15   case?  Because that's set for the 10th, --

16              THE COURT:  I haven't the vaguest idea.

17              MR. CREAGER:  -- 11th and 12th, and last I heard

18   that was going.  I talked -- it's Mr. Everett's case.  It's a

19   bank fraud case, but that could...

20              THE COURT:  Hang on.  No, must not be mine.

21              MR. CREAGER:  Well, let's -- if that case doesn't

22   go, then that 10th or the 11th or 12th I'd be -- at least be

23   here, or I could do it over the break.  So I am at least here

24   those days.

25              THE COURT:  Well, you want to look later in the
```

1    month, like the week of the 22nd?

2         MR. CREAGER:  At least I am not -- at least as far

3    as I know I am not in trial that week.

4         THE COURT:  Ms. Russell, will you be ruining other

5    lives that week?

6         MR. RUSSELL:  Probably, but I -- we can schedule

7    around that.

8         THE COURT:  Okay.  That sounded harsh.  It's not

9    that I didn't...

10         MR. CREAGER:  Well, it doesn't ruin my life.  He...

11         MR. RUSSELL:  Your question or my "probably"?  A

12    little ambiguity is a good thing, Judge.  Let's...

13         THE COURT:  Yeah.  Well, let -- why don't we do

14    it -- why don't we do it on February 23, 2016, at noon --

15         MR. RUSSELL:  Okay.

16         THE COURT:  -- for one hour.  Or should I do it for

17    an hour and a half?

18         MR. RUSSELL:  I think one hour.

19         MR. CREAGER:  If we can't figure it out in an hour,

20    we're in serious trouble anyway.

21         THE COURT:  Okay.  Before then I want you to get --

22    I want the government to file a consent to a nonjury trial

23    and I want the defendant to do the same thing with some magic

24    affidavit, okay?  Signed by mi- -- Dr. Benz.

25         So this matter is -- the notes should reflect the

1    following:  This matter is continued for a status conference

2    to February 23rd, 2016, at noon; secondly, the time between

3    today's date and that date is excluded for computation

4    purposes under the speedy trial act; and, thirdly, on or

5    before February 22nd, 2016, the parties shall each file a

6    consent to a nonjury trial, and Dr. Benz shall file an

7    appropriate affidavit together with such consent.  And I

8    won't otherwise issue an order if that's agreeable with you.

9              MR. RUSSELL:  That's fine, Your Honor.

10             MR. CREAGER:  And just because traveling is

11   difficult for Dr. Benz, if...

12             THE COURT:  He need not be here unless he wants to

13   be here.

14             MR. CREAGER:  Thank you, Judge.

15             THE COURT:  Anything else?

16             MR. RUSSELL:  No.

17             THE COURT:  Thank you.  We stand in recess.

18             MR. CREAGER:  Thanks, Judge.  Appreciate the time

19   this afternoon.

20             (Hearing adjourned at 1:09 p.m.)

21                    §        §        §

22   I certify that the foregoing is a correct transcript from the
     electronic sound recording of the proceedings in the
23   above-entitled matter.

24   _/s/ Julie A. Pell, RPR, CRR, CSR, CCR_          2/5/16
             Signature of Transcriber              Date
             Julie A. Pell, RPR, CRR
25