IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:13CR3121 |
| | ) | |
| v. | ) | VERDICT AND FINDINGS OF |
| | ) | FACT PURSUANT TO FEDERAL |
| JOSEPH J. BENZ, | ) | RULE OF CRIMINAL PROCEDURE |
| | ) | 23(c) |
| Defendant. | ) | |
| | ) | |

    This child pornography case, involving two counts, was tried to me by agreement of the parties. I confirmed, again, the jury trial waiver with the Defendant moments before the trial began. The Defendant has requested findings of fact pursuant to Federal Rule of Criminal Procedure 23(c).[1]

    While I worry terribly that I might convict an innocent man because it is possible that he was "insane" as that term is used in the relevant federal statute, I nevertheless find and conclude that the Defendant is guilty of both counts beyond a reasonable doubt. That is, he knowingly possessed child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), and he knowingly received child pornography in violation of 18 U.S.C. § 2252A(a)(2) between on or about January 1, 2013, and continuing to on or about May 20, 2013, in the District of Nebraska. (I do not find that he knowingly *distributed* child pornography; the government has failed to prove knowing distribution beyond a reasonable doubt.)  Most importantly, I further find and conclude that the Defendant has failed to satisfy his burden of proof on the affirmative defense of insanity.

    Briefly, here is my reasoning:

---

    [1]I compliment the lawyers in this case. They are among the best lawyers I know. They were zealous, professional, civil, and well-prepared during the trial.

A. Beyond a reasonable doubt, I find and conclude that the Defendant clearly knew that he was possessing and receiving child pornography and also that all the other elements of the crimes have been established. (See the Stipulation of the parties (filing no. 90) and the government's exhibits.) Indeed, the Defendant told both of the superb forensic psychologists who testified at trial that he knew he was possessing and receiving child pornography, although he said he was doing so to find and then bring to justice a man who abused the Defendant and his sister when they were children.

B. I reaffirm my pretrial ruling that the Defendant should be (and he was) precluded from offering psychiatric or psychological testimony that he lacked the intent to commit the crime because the offenses of conviction require only "knowing" violations and not wilful (or the like) violations. (Filing No. 44.) The Defendant's notice of his desire to present an insanity defense came only after I made the foregoing ruling. In other words, because the evidence against Dr. Benz was otherwise overwhelming, counsel was "forced" to present an insanity defense because of my restrictive pretrial ruling.

C. 18 U.S.C. § 17 provides:

> (a) Affirmative defense.--It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.
>
> (b) Burden of proof.--The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

D.  The Defendant was 52 at the time of his arrest. It is undisputed that the Defendant, who holds a doctoral degree in experimental psychology, was an "amazing"[2] fully tenured professor at the University of Nebraska at Kearney *until* sometime after his diagnosis of multiple sclerosis (MS) in about 2007. Along with the MS (which sometimes requires Dr. Benz to use a wheelchair and a leg brace), the Defendant began to suffer from RLS or "restless leg syndrom." RLS

> is a neurologic movement disorder often associated with a sleep complaint. Patients may suffer almost irresistible urges to move their legs, ''usually due to disagreeable leg sensations that are worse during inactivity and often interfere with sleep.'' *See Restless Legs Syndrome: Detection And Management in Primary Care*, National Institutes of Health, Pub. No. 00-3788 (March 2000).

*Hunt v. Metro. Life Ins. Co.*, 425 F.3d 489, 490 & n.1 (8th Cir. 2005).

E.  It is undisputed that following the onset of the MS and RLS, and before the first known possession of child pornography, the Defendant was prescribed a drug with the trade name Mirapex (Pramipexole). It is undisputed that Mirapex has the effect of increasing dopamine in the brain.

F.  Since about 2004 and thereafter, the package warning for Mirapex contained warnings like these:

> *Case reports and the results of a cross-sectional study suggest that patients can experience intense urges to gamble, increased sexual urges, intense urges to spend*

---

[2]"Amazing" was the adjective used by the government's psychologist during her oral testimony to describe the Defendant's performance prior to the deterioration of that performance following use of the drug that will be described next.

> *money uncontrollably, binge eating, and/or other intense urges and the inability to control these urges while taking one or more of the medications, including MIRAPEX, that increase central dopaminergic tone* and that are generally used for the treatment of Parkinson's disease. In some cases, although not all, these urges were reported to have stopped when the dose was reduced or the medication was discontinued. *Because patients may not recognize these behaviors as abnormal it is important for prescribers to specifically ask patients or their caregivers about the development of new or increased gambling urges, sexual urges, uncontrolled spending or other urges while being treated with MIRAPEX.* Physicians should consider dose reduction or stopping the medication if a patient develops such urges while taking MIRAPEX.
>
> (Court's Exhibit 1 (italics supplied by Kopf).)[3]

G. After taking the Mirapex, and both before and during the time frame of the indictment, I find that the Defendant began to engage in the behavior described in the foregoing warning. For example, he began to gamble online in amounts that caused his wife great concern. He bought an unneeded new car that would not accomodate his wheelchair, once again causing his wife much concern. He bought his wife an entire collection of little figures that she did not want and did not ask for. He developed a hyper-sexual interest in the molestation he and his sister jointly suffered while they were children. He began searching the Internet compulsively to find photos depicting his abuse. He installed file-sharing programs that ran automatically and sent Dr. Benz's computer huge amounts of child pornography. Using this massive database of child pornography, and spending hours and hours on the computer, the

---

[3]The Defendant's wife, who accompanied Benz to all his consultations with the neurologist, testified that neither she nor her husband were ever notified of these warnings.

> Defendant sought to find and bring the abuser to justice. He believed he was personally and subjectively justified in doing so. He lost interest in his family (including an autistic son who required assistance from both Dr. Benz and his wife). He lost interest in his research and his students. While he was able to maintain his job, his performance ratings fell dramatically. His wife began considering divorce because the person she had previously known "was gone."

H. Before turning to the two prongs of the insanity defense, I stress that the Defendant has the burden of proof to show by "clear and convincing evidence" that both prongs have been satisfied. "Clear and convincing" means a "high probability." *See*, *e.g.*, United States v. Long Crow, 37 F.3d 1319, 1323 (8th Cir. 1994).

I. I find by clear and convincing evidence that the Defendant has proven that he suffered during the relevant time frame from a "severe mental . . . defect."[4] I credit the extraordinary detailed explanation of Defendant's "severe defect" provided by Dr. Kirk Newring, Ph.D. In lay terms, the Defendant suffered from an excessive production of dopamine in the brain that was directly caused solely by the Mirapex that was prescribed to him by the neurologist who was treating Dr. Benz for MS and RLS. That defect was severe for the very reasons set forth in the drug company's warning quoted above. It caused the Defendant to engage in extremely self-destructive and compulsive behaviors. I also find that the Defendant would not have engaged in those self-destructive behaviors but for the excessive amount of dopamine caused by the Mirapex.

J. On the other hand, I find that the Defendant has failed to carry his burden on the second prong. That is, the Defendant has failed to show by

---

[4]The Defendant does not contend that he suffered from a severe mental illness.

clear and convincing evidence that he "was unable to appreciate . . . the wrongfulness of his acts."[5] In this regard, I credit the extremely persuasive testimony of Dr. Dia Brannen, Ph.D., from the Bureau of Prisons.

K. As to the issue of "appreciation of the wrongfulness" of an act under the federal insanity statute, the Seventh Circuit Court of Appeals has carefully described the three possible interpretations of "appreciation of wrongfulness":

> The statute does not define "wrongfulness." In the context of the insanity defense, courts and scholars have generally proposed three alternative definitions for the term: (1) legal wrongfulness, as in "contrary to law"; (2) moral wrongfulness, as in "contrary to public morality," determined objectively by reference to society's condemnation of the act as morally wrong; or (3) moral wrongfulness, as in "contrary to *personal* morality," determined subjectively by reference to the defendant's belief that his action was morally justified (even if he appreciated that it was illegal or contrary to public morality).

*United States v. Ewing*, 494 F.3d 607, 616 (7th Cir. 2007) (emphasis in original).

L. I agree with the Seventh Circuit Court of Appeals that the entirely subjective standard—the third one—is never appropriate. *Id.* at 621. But this was the standard that Dr. Benz applied to his own conduct. His logic ran something like this: My sister and I were abused, and I am personally and morally justified in searching for evidence of that molestation to

---

[5]The Defendant did not claim that he was unable to appreciate the nature and quality of his acts.

        bring the perpetrator to justice even though viewing extremely graphic images of the sexual exploitation of children (including babies and very young children) is condemned by the law, others in my community, and my wife and daughter as legally and morally wrong. That is, I have the right to be a vigilante.

M.     That leaves two possible alternatives—"contrary to law" and "contrary to public morality." In this case, no choice need be made. I am persuaded that Dr. Benz appreciated that what he was doing was both "contrary to law" and "contrary to public morality."[6] In any case, and under either standard, the Defendant did not prove otherwise by clear and convincing evidence.

Sadly,

IT IS ORDERED that a verdict of guilty on both counts is entered against Joseph J. Benz and his insanity defense is rejected for failure to satisfy the burden of proof.

DATED this 26th day of May, 2016.

                                                  BY THE COURT:
                                                 s/ *Richard G. Kopf*
                                                 Senior United States District Judge

---

[6]In particular, I find that the Defendant's explanation that he hid his illegal activities from his wife and daughter—because he did not want them to know he had been abused—is not credible. If his purpose in engaging in this behavior was to bring the perpetrator to justice, then, as a matter of necessity, his abuse, and that of his sister, would become known to everyone. Moreover, he made little or no effort to hide the other self-destructive, but legal, behaviors from his wife or daughter.